# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ROSETTA COOK,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | } Case No.: 2:14-cv-1992-MHH |
| | } |
| **CAROLYN W. COLVIN,** | } |
| **Commissioner of the** | } |
| **Social Security Administration,** | } |
| | } |
| **Defendant.** | } |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), plaintiff Rosetta Cook seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Ms. Cook's claims for a period of disability, disability insurance benefits, and supplemental security income. After careful review, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Ms. Cook applied for a period of disability, disability insurance benefits, and supplemental security income on November 9, 2011. (Doc. 8-6, pp. 2, 8). Ms. Cook alleges that her disability began on September 19, 2011. (Doc. 8-6, pp. 2, 8). The Commissioner initially denied Ms. Cook's claims on January 6, 2012. (Doc.

8-5, p. 4). Ms. Cook requested a hearing before an Administrative Law Judge (ALJ). (Doc. 8-5, p. 9). The ALJ issued an unfavorable decision on March 8, 2013. (Doc. 8-3, pp. 17-35). On August 14, 2014, the Appeals Council declined Ms. Cook's request for review (Doc. 8-3, p. 2), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. § 405(g) and § 1383(c).

## II.  STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If the ALJ's decision is supported by substantial

evidence, the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.  SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has established that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.[1]

---

[1] The ALJ provided an excellent, detailed description of the five-step evaluation process at pages 19-21 of his opinion. (Doc. 8-3, pp. 20-22).

In this case, the ALJ found that Ms. Cook has not engaged in substantial gainful activity since September 19, 2011, the alleged onset date. (Doc. 8-3, p. 22). The ALJ determined that Ms. Cook suffers from the following severe impairments: rheumatoid arthritis, aortic insufficiency, asthmatic bronchitis, essential hypertension, right shoulder bursitis, and lower back muscle strain. (Doc. 8-3, p. 22). The ALJ also concluded that Ms. Cook has a medical history of gastroesophageal reflux disease ("GERD"), but this impairment is non-severe. (Doc. 8-3, pp. 22-23). Based on a review of the medical evidence, the ALJ concluded that Ms. Cook does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 8-3, p. 24).

The ALJ determined that Ms. Cook has the residual functional capacity:

> to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that she cannot climb ladders, ropes or scaffolds, but can occasionally stoop, kneel, crouch and crawl. Overhead reaching with her bilateral upper extremities is limited to no more than occasionally. She can handle bilaterally no more than frequently. The claimant can be exposed to extremes of cold, heat, wetness, humidity, vibration, and pulmonary irritants no more than occasionally. Lastly, she should avoid all exposure to the operational control of hazardous or moving machinery or to unprotected heights.

(Doc. 8-3, p. 26). Based on this RFC, the ALJ concluded that Ms. Cook is not able to perform her past relevant work as a fast food worker, a linen worker, a stock clerk, or a cashier. (Doc. 8-3, p. 33). At the time of the alleged disability onset

date, Ms. Cook was 51 years old; she has at least a high school education. (Doc. 8-3, p. 33). Relying on testimony from a vocational expert, and considering Ms. Cook's age, education, work experience, and RFC, the ALJ found that jobs exist in the national economy that Ms. Cook can perform, including ticket seller or taker, cashier, receptionist, and information clerk. (Doc. 8-3, p. 34).[2] Accordingly, the ALJ determined that Ms. Cook has not been under a disability within the meaning of the Social Security Act. (Doc. 8-3, p. 34).

## IV. ANALYSIS

Ms. Cook argues that she is entitled to relief from the ALJ's decision because the ALJ failed to properly consider the opinions of her treating physicians, Dr. Mike Chen and Dr. Gilbert Perry. The Court disagrees.

An ALJ must give considerable weight to a treating physician's medical opinion if the evidence supports the opinion, and the opinion is consistent with the doctor's own records. *See Winschel*, 631 F.3d at 1179. An ALJ may refuse to give the opinion of a treating physician "substantial or considerable weight . . . [if] 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Good cause exists when "(1) [the] treating physician's

---

[2] The ALJ determined at step four that Ms. Cook could not perform her past relevant work as a cashier. The work that Ms. Cook previously performed as a cashier qualified as light, semi-skilled work. (Doc. 8-3, p. 33). During the hearing before the ALJ, a vocational expert testified that Ms. Cook could perform work as a cashier that qualifies as light, unskilled work. This light, unskilled cashier position is coded differently from Ms. Cook's previous work as a semi-skilled cashier. (*See* Doc. 8-3, pp. 63-64).

5

opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41; *see also Crawford*, 363 F.3d at 1159. The ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 931 (11th Cir. 2013) (internal quotation and citation omitted).

The ALJ considered medical records from two of Ms. Cook's treating physicians, Dr. Chen and Dr. Perry. The ALJ discussed Dr. Chen's and Dr. Perry's records fully and accurately in his opinion. (Doc. 8-3, pp. 22-23, 27-30).

With respect to Dr. Chen, the administrative record indicates that he has treated Ms. Cook for a number of years. In October 2007, Dr. Chen treated Ms. Cook for generalized body aches and flulike symptoms. (Doc. 8-9, p. 19). Ms. Cook saw Dr. Chen twice in 2008 for allergic rhinitis, sinusitis, and a rash on her neck. (Doc. 8-9, pp. 17-18). In July 2009, Ms. Cook saw Dr. Chen for gastroenteritis. (Doc. 8-9, p. 16). In September 2009, Ms. Cook visited Dr. Chen, and she complained of dizziness and nausea. Dr. Chen diagnosed Ms. Cook with allergic rhinitis and vertigo. (Doc. 8-9, p. 15). Ms. Cook did not visit Dr. Chen again until April of 2010. During the April visit, Ms. Cook complained of bilateral leg, arm, and hand pain. (Doc. 8-9, p. 14). Dr. Chen diagnosed Ms. Cook with arthritis. Ms. Cook received Depo Medrol and Toradol injections for pain. Dr.

Chen also prescribed Mobic and Prednisone to treat Ms. Cook's symptoms. (Doc. 8-9, p. 14).

Dr. Chen saw Ms. Cook again in July of 2010 for left foot pain. (Doc. 8-9, p. 13). The treatment notes indicate that Ms. Cook had visited the emergency room the night before complaining of left foot pain. (Doc. 8-9, p. 13).[3] Dr. Chen diagnosed Ms. Cook with "foot pain/tendonitis" and prescribed Mobic. (Doc. 8-9, p. 13).

Ms. Cook saw Dr. Chen nine months later on April 25, 2011. (Doc. 8-9, p. 12).[4] Dr. Chen diagnosed Ms. Cook with asthmatic bronchitis. (Doc. 8-9, p. 12). When Ms. Cook saw Dr. Chen one month later, Dr. Chen noted that her asthmatic bronchitis was "better." (Doc. 8-9, p. 11). Ms. Cook saw Dr. Chen sometime between June and August of 2011 for "severe back pain" as a result of having to "stand all day" and "pick up heavy things." (Doc. 8-9, p. 10).[5] Dr. Chen diagnosed Ms. Cook with "tendonitis/muscle spasm" and prescribed Flexeril. Dr. Chen administered another Depo Medrol and Toradol injection. (Doc. 8-9, p. 10). On September 12, 2011, Ms. Cook saw Dr. Chen and complained of fingertip numbness due to "writing a lot." The treatment note mentions no medication for

---

[3] X-rays taken during this emergency room visit were normal. The emergency room physician diagnosed Ms. Cook with arthritis. (Doc. 8-8, p. 96).

[4] Treatment notes indicate that Ms. Cook visited the emergency room five days earlier, complaining of body aches and coughing. (Doc. 8-9, p. 12; *see also* Doc. 8-8, p. 52).

[5] The month of this visit does not appear on the copy of the treatment note. (Doc. 8-9, p. 10).

pain control, and Dr. Chen decreased the dosage for Ms. Cook's blood pressure medication. (Doc. 8-9, p. 9).

In October 2011, Ms. Cook saw Dr. Chen shortly after she had a hysterectomy. Her physical examination that day was normal. (Doc. 8-9, p. 6). During this visit, Dr. Chen diagnosed Ms. Cook with "arthritis/non-RF rheumatoid arthritis" and administered a Depo Medrol and Toradol injection. Dr. Chen also "talked about disable status" with Ms. Cook. (Doc. 8-9, p. 6). Treatment notes from November 2011 show that Ms. Cook complained of "hands, legs, arms pain." Although her physical examination revealed no abnormalities, Dr. Chen administered another Depo Medrol and Toradol shot. (Doc. 8-9, p. 3). Ms. Cook asked about filing for disability, and Dr. Chen agreed due to "severe arthritis." (Doc. 8-9, p. 3).

Dr. Chen saw Ms. Cook again in January of 2012 for "severe back pain and arthritis." (Doc. 8-10, p. 42). Her physical examination was largely normal with some tenderness in her lower back and shoulders. An x-ray of her shoulder was "ok." Dr. Chen administered another Depo Medrol shot. Treatment notes from this visit reference a "back brace." (Doc. 8-10, p. 42).

Ms. Cook visited Dr. Chen one month later in February of 2012 because she wanted a "pain shot." (Doc. 8-10, p. 41). Ms. Cook complained of limited motion in her right shoulder. On examination, Dr. Chen noted that Ms. Cook's right

shoulder was tender. (Doc. 8-10, p. 41). Dr. Chen diagnosed Ms. Cook with tendonitis in her right shoulder and administered another Depo Medrol and Toradol injection. (Doc. 8-10, p. 41). Ms. Cook saw Dr. Chen for a final time in May 2012. (Doc. 8-10, p. 40). Ms. Cook complained of chest pain. Dr. Chen found that Ms. Cook's chest was mildly tender upon examination. Dr. Chen diagnosed Ms. Cook with a muscle strain and administered another Depo Medrol and Toradol shot. (Doc. 8-10, p. 40).

Dr. Perry is Ms. Cook's treating cardiologist. He has treated Ms. Cook for aortic insufficiency and hypertension since October 2000. By 2003, Ms. Cook reported that she was "feeling well" and had no chest discomfort. (Doc. 8-8, p. 13). Ms. Cook's heart had a regular rate and rhythm, and Dr. Perry noted that Ms. Cook's "blood pressure control is improved." (Doc. 8-8, p. 14). Ms. Cook saw Dr. Perry again in April of 2006. (Doc. 8-8, p. 11). Dr. Perry described Ms. Cook's history of "significant aortic insufficiency by echo for many, many years, but with normal left ventricular sixe and function and really no enlargement of left ventricle over time." (Doc. 8-8, p. 11). Ms. Cook reported no congestive symptoms or exertional fatigue. (Doc. 8-8, p. 11). October 2006 treatment notes reflect that Ms. Cook "ha[d] been doing well" since her visit with Dr. Perry six months earlier. (Doc. 8-8, p. 9). Ms. Cook reported no chest discomfort or exertional fatigue, and she had lost approximately 10 pounds since July 2006.

(Doc. 8-8, p. 9). Upon examination, Ms. Cook had a 2/6 diastolic decrescendo murmur, but her heart had a normal rate and rhythm. Dr. Perry noted that based upon Ms. Cook's last echocardiogram, "her left ventricular size and function were normal." (Doc. 8-8, p. 9-10). In October 2007, Dr. Perry again noted that Ms. Cook "has been doing well since last being seen." (Doc. 8-8, p. 5). Ms. Cook was not experiencing chest discomfort or congestive symptoms. (Doc. 8-8, p. 5). Dr. Perry commented that Ms. Cook had been losing weight because she was watching her diet. (Doc. 8-8, p. 5). Upon examination, Ms. Cook had a 2/6 diastolic ejection murmur but regular heart rate, rhythm, and size. (Doc. 8-8, pp. 5-6). Dr. Perry noted that Ms. Cook's aortic insufficiency had been stable for 10 years and that her blood pressure was controlled. (Doc. 8-8, p. 6).

Ms. Cook did not see Dr. Perry again until April 2012. During this visit, Ms. Cook complained of fatigue. She also reported that she tires and gets short of breath easily. (Doc. 8-10, p. 48). Ms. Cook denied chest pain. (Doc. 8-10, p. 48). Upon examination, she had a 2/6 diastolic decrescendo murmur, but her heart had a regular rhythm. (Doc. 8-10, p. 49). Dr. Perry diagnosed Ms. Cook with severe aortic valve disorder, but he noted that her left ventricle was still a normal size and had not enlarged significantly since 2007. Dr. Perry noted that Ms. Cook had fatigue, which may have been associated with her depression. (Doc. 8-10, p. 50).

Dr. Perry also commented that Ms. Cook had a "very sedentary" lifestyle. (Doc. 8-10, p. 50).

The ALJ properly concluded that the medical records from Dr. Chen and Dr. Perry demonstrate that Ms. Cook has a number of medical conditions, but none of the records indicates the extent to which Ms. Cook's "medical conditions would impact [her] ability to perform [her] past relevant work." *Hunter v. Comm'r of Soc. Sec.*, 609 Fed. Appx. 555, 558 (11th Cir. 2015). Therefore, these records are of little probative value. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."); *Obsborn v.Barnhart*, 194 Fed. Appx. 654, 667 (11th Cir. 2006) (ALJ's decision that claimant could perform past relevant work was supported by substantial evidence because claimant "failed to offer objective evidence of his inability to work").

Ms. Cook relies on the record that states that Dr. Chen discussed disability with her and "agree[d] due to severe arthritis." She argues that that record provides an opinion about the way in which her arthritis limits her ability to work. (Doc. 8-9, p. 30; *see also* Doc. 10, p. 8). Dr. Chen did not expressly state that Ms. Cook is disabled or that her arthritis limits her ability to work, and he did not elaborate in his notes about the nature of his discussion with Ms. Cook. To the

extent that Dr. Chen's statement constitutes an opinion that Ms. Cook is disabled, a determination of disability is squarely within the province of the Commissioner. *See* 20 C.F.R. § 416.927(d)(1) (determinations of disability are "reserved for the Commissioner because they are administrative findings that are dispositive of a case. . . ."). Moreover, the notes that accompany Dr. Chen's statement that he discussed disability with Ms. Cook and "agree[d] due to severe arthritis" and his other treatment records simply set forth diagnoses and impairments. These notes do not provide information regarding limitations related to Ms. Cook's arthritis or back pain. Dr. Chen's notes do not address Ms. Cook's ability to work with proper treatment for her arthritis.

Likewise, Dr. Perry's comment that Ms. Cook maintains a "sedentary" lifestyle does not constitute an opinion regarding the extent to which Ms. Cook's aortic valve disorder limits her ability to work. Ms. Cook's argument that this April 2012 statement constitutes an opinion that she is limited to sedentary work asks too much of Dr. Perry's observation. (*See* Doc. 10, p. 9). In addition to noting Ms. Cook's sedentary lifestyle, Dr. Perry stated that Ms. Cook's heart had a regular rhythm and that her left ventricle was still a normal size and had not enlarged significantly since 2007. (Doc. 8-10, p. 50).

The ALJ properly considered Dr. Chen's and Dr. Perry's treatment notes within the context of the entire record. *See Hunter*, 609 Fed. Appx. at 558 (11th

Cir. 2015). That record included the January 6, 2012 opinion of state agency non-examining medical consultant, Dr. Robert Estock. Dr. Estock reviewed Ms. Cook's medical records and reported that Ms. Cook retained the residual functional capacity to perform light work with a number of postural, manipulative, and environmental limitations. (Doc. 8-9, pp. 52-63). The ALJ gave "great weight" to Dr. Estock's opinions because "Dr. Estock's findings and limitations are supported by the longitudinal medical record as whole." (Doc. 8-3, p. 33). In this case, substantial evidence supports the ALJ's decision to consider Dr. Estock's report and assessment because the ALJ "arrived at his decision after considering the record in its entirety and [he] did not rely solely on the opinion of the state agency physician[]." *Ogranaja v. Comm'r of Soc. Sec.*, 186 Fed. Appx. 848, 850-51 (11th Cir. 2006) (per curiam); *see also Wilkinson v. Comm'r of Soc. Sec.*, 289 Fed. Appx. 384, 386 (11th Cir. 2008) (per curiam) ("The ALJ did not give undue weight to the opinion of the non-examining state agency physician because he did not rely solely on that opinion.").[6]

In addition to evaluating the report from Dr. Estock and the records from Dr. Chen and Dr. Perry, the ALJ considered the opinion of Dr. William Meador. Dr. Meador performed a consultative physical examination of Ms. Cook in December

---

[6] Generally speaking the "opinions of nonexamining, reviewing physicians, when contrary to the opinion of a treating physician, are entitled to little weight and do not, 'taken alone, constitute substantial evidence.'" *Gray v. Comm'r of Soc. Sec.*, 2013 WL 6840288 *3 (11th Cir. Dec. 30, 2013) (per curiam) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)).

2011, and he reviewed Ms. Cook's entire medical record and course of treatment. (Doc. 8-10, pp. 43-46). Dr. Meador concluded that Ms. Cook suffers from rheumatoid arthritis. (Doc. 8-10, p. 46). Dr. Meador noted that there was minimal sequela on examination, and that Ms. Cook had a cane which was neither prescribed nor medically necessary. (Doc. 8-10, p. 45). Dr. Meador also diagnosed Ms. Cook with lower back pain with spasm, but did not find any functional limitations. (Doc. 8-10, p. 46). These findings are consistent with Ms. Cook's treatment records as a whole.

The ALJ thoroughly reviewed all of the medical evidence in the record and concluded that "Dr. Chen has never given [Ms. Cook] any functional limitations due to any of her conditions, and there is no record of any restrictions from any other source being placed upon [Ms. Cook] due to her impairments." (Doc. 8-3, pp. 27-31). The absence of a treating physician's finding of a limitation or restriction on Ms. Cook's ability to work and Dr. Estock's and Dr. Meador's opinions support the ALJ's RFC findings. Accordingly, substantial evidence supports the ALJ's decision to deny benefits.

## V. CONCLUSION

For the reasons discussed above, the Court finds that the ALJ's decision is supported by substantial evidence, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the

Commissioner. Accordingly, the Court affirms the Commissioner's decision. The Court will enter a separate final judgment consistent with this memorandum opinion.

      **DONE** and **ORDERED** this November 30, 2015.

                                                */s/ Madeline H. Haikala*
                                             **MADELINE HUGHES HAIKALA**
                                             UNITED STATES DISTRICT JUDGE